# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

**CIVIL ACTION NO. 09-342-DLB**

**JAMES MESSER**                                                                 **PLAINTIFF**

vs.                         **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**                        **DEFENDANT**
**SOCIAL SECURITY ADMINISTRATION**

\*    \*    \*    \*    \*    \*    \*

Plaintiff brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security.[1] The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James Messer protectively filed his application for supplemental security income (SSI) payments on August 26, 2005. (Tr. 78-83). At the time of filing, Plaintiff was 45 years old and alleged a disability onset date of October 31, 1994. (Tr. 78). Plaintiff asserts that he is disabled due to anxiety, bad nerves, limited education, hearing loss, high cholesterol, and low blood sugar. (Tr. 83-89). Plaintiff claims he is unable to work due to the anxiety he feels when in public or interacting with others, and due to the variety of physical ailments from which he suffers. (Tr. 89). His application was denied initially on

---

[1]Because Plaintiff's initial application sought supplemental security income the Court's jurisdiction is proper under 42 U.S.C. § 1383(c)(3). Section 1383(c)(3) incorporates by reference 42 U.S.C. § 405(g) stating that "[t]he final determination of the Commissioner ... after a hearing under [§ 1383(c)(1)] shall be subject to judicial review as provided in section 405(g) of this title.".

January 25, 2006 (Tr. 68-71), and upon reconsideration on March 31, 2006 (Tr. 64-66). At Plaintiff's request, an administrative hearing was conducted on April 25, 2007, by Administrative Law Judge ("ALJ") James P. Alderisio. (Tr. 62, 281-301). On May 22, 2007, the ALJ determined that Plaintiff was not disabled and therefore not entitled to SSI payments. (Tr. 18-27). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 14, 2009. (Tr. 5-8).

Plaintiff's August 26, 2005 application is his third for SSI benefits. From October 1, 1994, to October 2002, Plaintiff received benefits based on disability due to mental retardation, personality disorder, and drug and alcohol abuse. (Tr. 18, 42). In 1996, however, Congress enacted Public Law No. 104-121, which terminated disability benefits after January 1, 1997, for which "drug addiction and/or alcoholism was a contributing factor material to ... [the] disability." As a result, Plaintiff was notified that his benefits would terminate on that date.

Plaintiff requested review after termination, alleging continued disability due to difficulty thinking, inability to use his left arm, and problems with his lungs and stomach. (Tr. 42). Accordingly, a hearing was held before a Disability Hearing Officer (DHO), who issued a decision on January 28, 1997, finding Plaintiff suffered from generalized anxiety disorder, depressive disorder, and personality disorder such that he met Listing 12.05C for mental retardation and was deemed totally disabled. (Tr. 42). As a result, Plaintiff continued to receive benefits. Once incarcerated, however, Plaintiff's benefits terminated effective October 1, 2002. (Tr. 18, 42).

Subsequent to his parole, Plaintiff protectively filed a second application for SSI benefits on September 2, 2003. (Tr. 42). This claim was denied initially and upon

reconsideration. (Tr. 42). A request for hearing was timely filed on April 5, 2004, but the hearing was delayed until July 27, 2005, because Plaintiff was incarcerated for a second time. (Tr. 42-43). ALJ John R. Barker reviewed Plaintiff's claim *de novo*, and concluded–contrary to the disability hearing officer–that Plaintiff's mental impairments did not medically equal the listing for mental retardation. (Tr. 48). Noting inconsistencies in Plaintiff's assertions and the presence of malingering, ALJ Barker found that Plaintiff's functional history was not indicative of an individual with mental retardation. (Tr. 48). Thus, ALJ Barker concluded that Plaintiff was not disabled. (Tr. 51-52). Plaintiff's request for review by the Appeals Council was denied, and Plaintiff did not seek judicial review. (Tr. 34-36).

After ALJ Alderisio's unfavorable decision relative to his third application for benefits, Plaintiff filed the instant action on October 13, 2009. (Doc. # 1). The matter has culminated in cross-motions for summary judgment with supporting memoranda, which are now ripe for adjudication. (Docs. # 11, 12, 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm

3

the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

In this case, ALJ Alderisio considered the unadjudicated time period from August 4, 2005, the date after ALJ Barker's unfavorable decision, to May 24, 2007, the date of his unfavorable decision. (Tr. 18). At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 4, 2005. (Tr. 21). At Step 2, the ALJ determined Plaintiff's combination of impairments–affective disorder, anxiety disorder, a small hernia,

and a substance abuse disorder in remission for one year–to be "severe" within the meaning of the applicable administrative regulations. (Tr. 21). However, at Step 3, the ALJ found that Plaintiff's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22). The ALJ assessed the severity of Plaintiff's mental impairments, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, Subsection 12.00(C) (Evaluation of Mental Impairments), concluding that Plaintiff "does not have marked or extreme limitations of psychological functioning in any area." (Tr. 22-23) (internal quotations omitted).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a limited range of medium work, with certain limitations. (Tr. 23). In particular, the ALJ restricted Plaintiff to no climbing of ladders, ropes or scaffolding; no more than occasional stooping or crouching; and, no exposure to loud noises or hazardous machinery. (Tr. 23). ALJ Alderisio found that Plaintiff may perform jobs that do not require any reading and that involve one and two step instructions. (Tr. 23). He also concluded Plaintiff could work jobs that do not involve exposure to the public and require only a limited but satisfactory ability to deal with coworkers and supervisors. Finally, he determined that Plaintiff "has a seriously limited but not precluded ability to deal with work-related stress." (Tr. 23). Based upon these findings, ALJ Alderisio concluded Plaintiff is unable to perform his past relevant work as a bagger because such work requires constant exposure to the public. (Tr. 26).

At Step 5, the ALJ considered the Plaintiff's age, education, work experience, and RFC in conjunction with the Medical Vocational Guidelines and testimony from a vocational expert to conclude there exist a significant number of jobs in the national economy that

5

Plaintiff can perform despite his functional limitations, including dishwasher and laundry worker. (Tr. 26-27). Consequently, the ALJ found that the Plaintiff has not been under a disability as defined by the Social Security Act since Plaintiff's application date of August 26, 2005. (Tr. 27).

### C. Analysis

Plaintiff raises two arguments on appeal. First, Plaintiff argues that ALJ Alderisio erred in adopting ALJ Barker's determination that Plaintiff failed to meet the criteria for mental retardation under Listing 12.05C. In particular, he contends that ALJ Alderisio was required to accept the disability hearing officer's favorable determination made in 1997, rather than ALJ Barker's unfavorable determination. Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, he asserts that ALJ Aldesirio impermissibly rejected the medical opinion of Dr. Syed Raza. Each argument will be discussed in turn.

### 1. ALJ Alderisio did not err in adopting ALJ Barker's prior determination that Plaintiff did not meet Listing 12.05C

Plaintiff asserts that he suffers from mental retardation as defined in the Listing of Impairments, Subsection 12.05C. To establish mental retardation, a plaintiff must meet the following two prongs: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subsection 12.05C. Plaintiff contends the first prong of the analysis is satisfied because principles of res judicata required ALJ Alderisio to adopt the DHO's 1997 determination that Plaintiff was disabled on account of his mental retardation under Listing 12.05C. He argues that

because mental retardation is not a condition that improves with time, new and material evidence cannot exist to adequately nullify application of res judicata to the DHO's finding. Plaintiff further contends the second prong of the analysis is satisfied given the limitations imposed by his affective disorder, anxiety disorder, and hernia. Plaintiff's argument that the ALJ was required to adopt the DHO's 1997 finding lacks merit.

In *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit made clear that principles of res judicata apply to administrative proceedings. Thus, an ALJ is obligated to follow the findings of fact made by a previous ALJ relative to the same claimant absent new or material evidence of an improvement in the claimant's condition. *Drummond*,126 F.3d at 842; SSAR 98-4(6) 63 Fed. Reg. 29771-01 (June 1, 1998); *see also Dennard v. Sec'y of Health and Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam); SSAR 98-3(6), 63 Fed. Reg. 29770-01 (June 1, 1998). The so-called *Drummond* rule applies to a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability, where that finding was made in a final decision by an ALJ or the Appeals Council on a prior disability claim. SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998). *Drummond*, therefore, effectively disallows a subsequent ALJ from reaching a contrary conclusion on the same facts:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998) (Social Security Acquiescence Ruling explaining how the Commission applies *Drummond* in subsequent disability claims).

Here, Plaintiff asserts that administrative res judicata–as applied under *Drummond*–required ALJ Alderisio to accept the DHO's 1997 mental retardation finding because there was no new and material evidence of improvement in his condition. Given the procedural history of this case, Plaintiff's reliance on *Drummond* is misplaced as its holding is completely inapplicable to the DHO's 1997 finding. Plaintiff Messer received disability benefits from 1997 until his incarceration on August 1, 2001. Once incarcerated, the Social Security Act excludes from SSI eligibility "anyone who is an 'inmate of a public institution.'" *Schweiker v. Wilson*, 450 U.S. 221, 224 (1981) (quoting 42 U.S.C. § 1382(e)(1)(A)). Thus, residents of public institutions may not receive SSI benefits. 20 C.F.R. § 416.211. Social security benefits are suspended, effective with the first full month an individual is a resident of a public institution; suspended benefits are resumed "effective with the earliest day of the month in which a recipient is no longer a resident of a public institution." 20 C.F.R. § 416.1325.

Regardless of the reason for suspension, moreover, an individual's benefits are *terminated* "effective with the start of the 13th month after the suspension began." 20 C.F.R. § 416.1335. In other words, a claimant's benefits are terminated after twelve consecutive months of suspension regardless of the presence or absence of any new or material evidence indicating a marked medical improvement in the plaintiff's condition. In this case, Plaintiff's SSI benefits did not automatically resume following his release from prison because his incarceration lasted approximately twenty-five months. His benefits were accordingly terminated in October 2002–the thirteenth month after he was initially incarcerated–nullifying suspension and any later entitlement to resumption of benefits. 20 C.F.R. § 416.1335.

Once a claimant's benefits are terminated, as opposed to merely suspended, he must submit a new application for benefits subject to the five-step sequential evaluation process. *See Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1309 (D. Kan. 2007) (court rejected plaintiff's contention that because she was eligible for SSI benefits before her incarceration she must be awarded benefits upon release, concluding that once a claimant's benefits were terminated and she was obligated to file a new application, the five-step sequential analysis applied anew); *see also Hill v. Astrue*, No. 09-446-CL, 2010 WL 3361448, at *4 (D. Or. Aug. 19, 2010) (court rejected plaintiff's argument that his prior favorable disability determination informed his subsequent eligibility for benefits after a prolonged period of incarceration terminated his SSI benefits). Curiously, in citing *Drummond* to support his contention that the DHO's 1997 finding is entitled to preclusive effect, Plaintiff fails to explain why it is the DHO's 1997 decision–and not ALJ Barker's 2005 decision–that is entitled to administrative res judicata, especially given that Plaintiff's benefits were *terminated* in 2002 and he was not entitled to an automatic resumption of benefits. 20 C.F.R. § 416.1335; *see Zavilla v. Astrue*, No. 09-133, 2009 WL 3364853, at *17 (W.D. Pa. Oct. 16, 2009) ("After termination of benefits a claimant is required to file a new application, which is evaluated under the familiar five-step standard.") (citing 20 C.F.R. § 416.920).

Contrary to Plaintiff's assertion, absent new and material evidence ALJ Alderisio is bound by ALJ Barker's prior determination that Mr. Messer's combination of impairments did not meet or medically equal one of the impairment listings, including Listing 12.05C. (Tr. 46-47). In making his determination, ALJ Barker relied on evidence post-dating the DHO's 1997 hearing which established Plaintiff was of average intelligence and appeared

9

to be feigning the severity of his impairments. (Tr. 45-46). ALJ Barker's decision became final and binding with respect to the adjudicated period when the Appeals Council denied review of that decision and Plaintiff chose not to seek judicial review. (Tr. 34-36); *see* 20 C.F.R. § 416.1481. His decision that Plaintiff did not meet Listing 12.05C was a final decision on a prior disability claim that was required at a step in the sequential process for determining disability. ALJ Alderisio, then, properly adopted ALJ Barker's prior findings under *Drummond*. (Tr. 18-19). Plaintiff did not present any new and material evidence, nor did he make a showing of changed circumstances relating to a determination of the present claim that would require departure from ALJ Barker's prior determination at Step 3. Thus, ALJ Alderisio did not err in failing to find that Plaintiff has an impairment or combination of impairments that meets or medically equals Listing 12.05C.

### 2. ALJ Alderisio did not improperly reject the opinion of psychiatric consultative examiner Dr. Syed Raza

Next, Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because he improperly rejected the only medical opinion of record when evaluating Plaintiff's mental limitations. Specifically, Plaintiff argues ALJ Alderisio improperly rejected the opinion of the psychiatric consultative examiner Dr. Syed Raza, M.D. who examined Plaintiff in November 2005, subsequent to ALJ Barker's decision. (Tr. 204-08). Dr. Raza's opinion that Plaintiff has "poor coping skills" and "responds to pressures abnormally," Plaintiff argues, is uncontradicted by any medical source and should have been accorded great weight, rather than disregarded in favor of state agency reviews to the contrary. (Tr. 208). In essence, Plaintiff's criticism is that ALJ Alderisio improperly acted as a medical expert in evaluating the evidence. Moreover, Plaintiff argues

10

the state agency reviews are deficient because the record does not specify whether the consultants were licensed physicians or psychologists.

In response, the Commissioner first argues that ALJ Alderisio was not required to accord Dr. Raza's opinion great weight. And second, determining an individual's RFC is the sole province of the ALJ; it is a statutory assessment that is based upon all the relevant evidence in the record, "not simply on the opinions of medical sources." (Doc. # 13, at 13). The Commissioner contends that ALJ Alderisio properly assessed Dr. Raza's opinion in conjunction with the entirety of the medical record as well as all other opinions relevant to Mr. Messer's condition. The Commissioner's argument is well-taken.

As discussed previously, ALJ Barker's prior RFC determination is controlling for the subsequent unadjudicated period at issue here, unless Plaintiff presented new and material evidence or established changed circumstances impacting his condition. *Drummond*, 126 F.3d at 842; SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998). ALJ Barker concluded that Plaintiff "has the residual functional capacity for simple, non-detailed tasks where public and coworker contact is casual and infrequent, supervision is direct and non-confrontational, and changes in the work place are infrequent and gradually introduced and work that will accommodate functional illiteracy." (Tr. 51). Noting the record evidence did not dictate a different outcome concerning disability, ALJ Alderisio concluded Plaintiff has the ability to perform medium work, however, he did find "evidence of some physical and psychological deterioration since the prior hearing decision" and slightly modified Plaintiff's RFC. (Tr. 19). Specifically, he concluded that Plaintiff "has a seriously limited but not precluded ability to deal with work stress," (Tr. 23).

In support of his argument that ALJ Alderisio impermissibly substituted his opinion

11

for that of Dr. Raza, Plaintiff relies on *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996). He cites *Rohan* for the proposition that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Id.* at 970. As subsequently clarified by the Seventh Circuit, cases where an ALJ impermissibly "plays doctor" are typically characterized by: (1) rejection of a doctor's medical conclusion without other evidence, or (2) drawing medical conclusions without relying on medical evidence in reaching the determination. *Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003). Plaintiff's criticism of ALJ Alderisio unpersuasively implicates the first scenario.

Plaintiff's argument ignores the ALJ's rationale for rejecting that portion of Dr. Raza's opinion relative to Plaintiff's social coping ability in the first instance. ALJ Alderisio rejected Dr. Raza's assessment that Plaintiff had "poor coping skills" because the assessment was based on Plaintiff's behavior in a one-time consultative exam context, but was not supported by past treatment records. (Tr. 25). The weight given a medical opinion depends upon the extent to which it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (emphasis added). Past treatment records indicate Plaintiff has the ability to cope with his nervousness. In 2004, Plaintiff declined psychotropic treatment stating that his level of anxiety was tolerable without medication. (Tr. 136). ALJ Alderisio further observed that Plaintiff was under no apparent psychological distress at his hearing and *continued* to "tolerate his anxiety without medication." (Tr. 25). Because an ALJ's RFC determination is an administrative finding, not a medical opinion, the ALJ was well within his discretion in this case to reject that portion of Dr. Raza's assessment that was inconsistent with the record.

Contrary to Plaintiff's assertion, moreover, the Social Security regulations explicitly require an ALJ to consider and evaluate the findings of state agency psychological consultants as opinion evidence because agency consultants are considered "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i). The state agency psychological consultative opinions Plaintiff argues should have been rejected were consistent with the prior ALJ's RFC determination as well as the entirety of the record evidence. *See Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) (An ALJ's decision to credit the opinion of a state agency psychological consultant over that of a physician was proper where the consultant's opinion was more consistent with the entirety of the record evidence). ALJ Alderisio, therefore, properly considered the opinions of both state agency psychological consultants, who concluded Plaintiff was able to understand and remember simple instructions, tolerate co-workers, and sustain attention for extended periods of two-hour segments. (Tr. 211, 214-15). These opinions were consistent with ALJ Barker's prior finding that Plaintiff is able to adapt to work environments where "supervision is direct and non-confrontational" and "changes in the workplace are infrequent and gradually introduced." (Tr. 51). Significant in the Court's view, the ALJ did not merely reject Dr. Raza's opinion in favor of the state agency consultants' opinions; rather, he provided well-reasoned analysis concerning the deficiencies in Dr. Raza's opinion and highlighted its inconsistencies with the record evidence.

One final matter deserves brief comment. When viewed in its entirety, Dr. Raza's opinion is largely consistent with ALJ Alderisio's ultimate RFC determination. In November 2005, Dr. Raza concluded Plaintiff has "a fair understanding in remembering simple one and two-step instructions. He has good sustained concentration and persistence to

complete tasks in a normal amount of time [and] … [h]is social interactions are fair with … supervisors." (Tr. 208). This finding is almost identical with ALJ Alderisio's RFC determination, which allows for medium work but restricts Plaintiff to jobs that involve one or two step instructions, precludes Plaintiff's exposure to the public, but recognizes his ability to moderately interact with a co-worker or supervisor. (Tr. 23). It seems, then, ALJ Alderisio's judgment to reject that portion of Dr. Raza's opinion inconsistent with the rest of Plaintiff's medical record was entirely reasonable. ALJ Alderisio's RFC determination is supported by substantial evidence.

### III. CONCLUSION

The record contains substantial evidence supporting the ALJ's finding that Plaintiff is not disabled. Although the record contains differing opinions as to Plaintiff's functional limitations, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED THAT:**

(1) the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) that Plaintiff's Motion for Summary Judgment (Doc. #11) is hereby **DENIED**;

(3) that Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**;

(4) A judgment affirming this matter will be entered contemporaneously herewith.

This 17th day of November, 2010.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\09-342-Messer2 MOO.wpd